IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 20-cr-00092-DDD

UNITED STATES OF AMERICA,

        Plaintiff,

v.

**PAUL TRUJILLO**,

        Defendant.

---

## SENTENCING STATEMENT

---

Paul Trujillo, through his attorney, Assistant Federal Public Defender Laura H. Suelau, respectfully requests this Court impose a sentence of 30 months.[1] 30 months incarceration and 3 years of supervised release best effectuates the purposes of sentencing outlined in 18 U.S.C. § 3553(a)

### I.    Mr. Trujillo's relatively peaceful childhood was interrupted at a critical age.[2]

Paul Trujillo was born addicted to heroin. His mother, Barbara Quick, used during her pregnancy and her son was born addicted and sickly. Fortunately, his maternal grandmother, Elizabeth Mudrow took the baby and raised him on a farm in Greeley, Colorado as "Paul Mudrow." For the first ten years of his life, Mr. Trujillo saw very little of his mother and knew nothing of his father (whose name Mr. Trujillo did not learn until he was 10 years old). Ms. Quick lived in Arizona with his

---

[1] Should this Court overrule Mr. Trujillo's Objection to the Presentence Report, Doc. 40, and determine his guideline range is higher than 30-37 months, he asks this Sentencing Statement be construed as a Motion for Variant Sentence.

[2] The personal history provided is based on the PSR, and counsel's interviews with Mr. Trujillo and Ms. Quick.

brothers, Tony and Jason. Ms. Mudrow provided Mr. Trujillo with structure, discipline, and a strong work ethic. Her love and attention helped him cope with feelings of abandonment by his own parents.

Mr. Trujillo may have entirely overcome his in-utero heroin exposure in the loving environment provided by his grandmother. He strongly believes that he might have graduated from high school a straight-A student and gone on to have a materially different life. Instead, his life was entirely upended at 10 years-old when Ms. Quick and his two older brothers, Jason (then 15 years-old) and Tony (12), moved back to Greeley.

Ms. Quick did not return to Colorado to care for or be involved with her young son. Instead she largely ignored him and instead drank, used drugs, and partied while living in an RV on the farm. Mr. Trujillo often saw his mother drinking and using and watched her be arrested and go to jail on different occasions. Jason too was incarcerated around this time for a drug-related crime. Tony and Jason introduced Mr. Trujillo to marijuana, alcohol, and all manner of things to which he'd never been exposed. Around this time, one of his brothers informed Mr. Trujillo about his father, telling him "he has another family." Mr. Trujillo learned he had four paternal siblings around his age and believed his father had chosen them over him.

A year after his mother and brothers returned to Greeley, Tony joined the "Play Boyz" gang. He brought his 11-year-old brother with him. The Play Boyz were what experts refer to as a "junior" "pee wee" or "wannabe" gang wherein the kids get in fights in and after school, tag things with spray paint, and generally go around unsupervised.[3] To such young adolescents, gang membership seems to present opportunities for fun, belonging, friendship and romantic relationships. For Mr. Trujillo, the

---

[3] DOJ, Juvenile Justice Bulletin, https://www.ojp.gov/pdffiles1/ojjdp/231116.pdf,

older Play Boyz were father figures. He recalls not having spent time around any men (let alone male role models) growing up and he idolized the older members of the gang.

The Department of Justice's Office of Juvenile Justice and Delinquency Prevention's (OJJDP's) identifies a list of risk factors that predict juvenile delinquency and gang membership.[4] Unsurprisingly, family instabilty such as single-parent households, or caretaker changes, is strongly correlated with gang membership.[5] It's also not uncommon for children to follow a sibling into a gang.[6]

Unfortunately, Tony's "junior" gang soon lead Mr. Trujillo into real trouble, and he incurred his first juvenile conviction at just 14 years-old. His involvement with Play Boyz had other, life altering consequences. He dropped out of school after the 9th grade, began using drugs, and had a child with his girlfriend when he was just 17 years-old. Within a few years he incurred a number of more serious criminal convictions.

The probation officer cites this early criminal history as an aggravating factor. That conclusion is erroneous and fails to recognize the lessened culpability of juvenile and young adult offenders.[7] Courts and mental health professionals widely recognize that the lack of maturation in juvenile brains translates to lessened culpability and lessened efficacy of deterrence in juvenile offenders. More recent research indicates that lack of maturity continues well into young adulthood and only begins to decline at age 24.[8] However, by the time Mr. Trujillo turned 24, he'd already incurred two felonies and spent

---

[4] DOJ, Juvenile Justice Bulletin, https://www.ojp.gov/pdffiles1/ojjdp/231116.pdf.
[5] *Id.*
[6] *Id.*
[7] *See Graham v. Florida,* 560 U.S. 48 (2010); *See also Roper v. Simmons,* 543 U.S. 551 (2005); Elizabeth Cauffman, Laurence Steinberg, *Emerging Findings From Research of Adolescent Development and Juvenile Justice,* Victims and Offenders, 7:428-449, 2012.
[8] Cauffman and Steinberg, 431-32; Raymond Collins, *Onset and Desistance in Criminal Careers: Neurobiology and the Age-Crime Relationship,* J. Offender Rehabilitation, Vol. 39(3), 2004.

significant time in Juvenile Detention and the Department of Corrections – exceedingly difficult obstacles to overcome. The picture of Mr. Trujillo's childhood after the age of 10 and how it led him to carrying a weapon by 14 and two felony convictions by 24 is tragic, not aggravating.

Mr. Trujillo's criminal history, however, may not be the most serious and lasting consequence of his former gang membership. Instead, it is his addiction to drugs, including heroin and methamphetamine. He was introduced to methamphetamine at 17 and has struggled with his addiction ever since.

## II.   Mr. Trujillo's struggle with substance use disorder has hindered efforts to be a productive adult.

As Mr. Trujillo aged, he genuinely desired to leave gang life and criminality behind. He covered up his gang-related tattoos, cut off contact with negative influences, and enjoyed periods of sobriety.[9] He was paroled from an 18-month DOC sentence in 2016 and successfully completed that term in 2018. During his parole and for about a year after, he was sober, employed, and moving in a positive direction. He enjoyed a good relationship with his parole officer and was even allowed to work at an oilfield out of state. That was all erased when he relapsed in 2019 and in short order incurred the instant offense and the two Weld County cases – all while on methamphetamine.[10]

Methamphetamine is highly addictive, and its use often leads to poor decision making and, by extension, criminality. Long-term use of methamphetamine can result in neuropsychological deficits including impairments in memory, attention, and executive function. Many of Mr. Trujillo's crimes, like the instant offense, were a symptom of his disease and not entirely volitional. Stanford University

---

[9] Doc. 27, ¶ 34.

[10] The instant case arose when officers were executing and arrest warrant for those Weld County cases. The conduct here did not involve any sort of brandishing, threatening, or otherwise using the firearm.

addiction specialist Anna Lembke, MD, describes the situation aptly: "if you see somebody who continues to use despite their lives being totally destroyed — losing their jobs, losing loved ones, ending up in jail — nobody would choose that. Nobody anywhere would ever choose that life. So clearly it is beyond this individual's control on some level."[11]

In the months after Mr. Trujillo's relapse and before his arrest in December 2019, he began to feel completely hopeless and helpless. He seriously contemplated suicide. On the night of his arrest, the single bullet in the gun was intended for him. Fortunately, Mr. Trujillo's plan was foiled. Despite being incarcerated since December 2019, he's in a more hopeful place.

### III.    Mr. Trujillo has a plan for his future that does not include recidivism.

Mr. Trujillo has been in continuous custody since his arrest (and the date of the instant offense) on December 20, 2019. During that time he's begun to imagine and work towards a life he can be proud of upon release. For one, he's worked to build a relationship with his children. He doesn't disagree with his mother's statement that he's never really had a strong relationship with his children. He never had a paternal model, and was unprepared to be a father at 17. However, he is working to change that now. He writes weekly letters to Paul Ray, Xavier, and Joshia. He regrets not having been a better father to them, but knows they are at an age where he might still have an impact, so he warns them about the destructive power of gangs and drugs and is honest about his own failings. He's also taken advantage of every program GEO provides (however limited).[12] Outside of that, he spends time in prayer, reading the bible, and exercising in order to disengage from the pettiness and power dynamics that play out among inmates in GEO.

---

[11] Vox, *The opioid epidemic, explained,* German Lopez, https://www.vox.com/science-and-health/2017/8/3/16079772/opioid-epidemic-drug-overdoses (2017

[12] Mr. Trujillo's certificates of completion for those programs were submitted with Doc. 40.

18 U.S.C. § 3553(a)(2)(D) requires this court to consider what sentence will provide Mr. Trujillo with training, treatment, and education in the "most effective manner." A prolonged prison sentence will not accomplish that objective. The Bureau of Prisons provides just 17% of inmates with substance use issues with drug treatment of any form. That percentage has plummeted with the outbreak of COVID-19 and it is unlikely Mr. Trujillo will receive any drug treatment while incarceated.[13]

Nonetheless, Mr. Trujillo plans to take advantage of whatever programming *is* available in the BOP, and specifically requests to be designated to Yazoo City, where he might enroll in vocational training.[14]

Even in the absence of vocational training, Mr. Trujillo has a plan for success upon release. He hopes to live with his brother and sister-in-law, Tony and Jennifer Trujillo. Tony has come a long was since his own federal case in 2010. He was released from the BOP in 2015, successfully completed supervision, and now owns a small business in Colorado Springs. Mr. Trujillo and Tony talk at length about what is required to be successful after incarceration. Tony is not the only model for rehabilitation in Mr. Trujillo's life. His mother also enjoys long-term sobriety and lives a productive and healthy life. Ms. Quick also offered to allow Mr. Trujillo to live with her, but he believes he may be more successful if he moves away from all possible temptations in Greeley.

Mr. Trujillo is now 41 years-old and (rightly) believes himself to be at a critical point – he can continue to seek rehabilitation, or he risks growing old and institutionalized incarcerated. Spending his 40th birthday in April 2020 incarcerated, during a global pandemic, impressed Mr.

---

[13] *See* Redonna Chandler, Bennett Fletcher, and Nora Volkow, *Treating Drug Abuse and Addiction in the Criminal Justice System, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2681083/.*

[14] Yazoo City FCC has a Low, Medium, and USP facility and therefore can likely accommodate Mr. Trujillo regardless of his designation score.

Trujillo with the seriousness of his conduct and reinforced his desire to stay sober and out of custody.

Even independent of his drive for self-improvement, age is a deterrent to crime– recidivism begins to decline steeply at age 35. A prison sentence for someone naturally aging out of crime, like Mr. Trujillo, does achieve incapacitation, "but that incapacitation is a costly way to deter future crimes by aging individuals who are already less likely to commit those crimes by virtue of age."[15] For that, and all of the forgoing reasons, no more than 30 months is required to deter Mr. Trujillo from future crime.

**IV.    Conclusion.**

For the foregoing reasons, a sentence of 30 months followed by 3 years of supervised release is sufficient but not greater than necessary in this case.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/Laura Suelau
LAURA SUELAU
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
laura.suelau@fd.org
Attorney for Defendant

---

[15] *Id.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Rajiv Mohan, Assistant United States Attorney
Rajiv.Mohan@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Paul Trujillo (U.S. Mail)

s/Laura Suelau
LAURA SUELAU
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
laura.suelau@fd.org
Attorney for Defendant

8